■ In the Matter of MARY OF OAKKNOLL et al., Appellants, v THOMAS A. COUGHLIN, III, as New York Commissioner of Correctional Services, Respondent. — Appeal from a judgment of the Supreme Court at Special Term (Cobb, J.), entered March 11, 1983 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to, *inter alia,* annul a determination of the New York State Department of Correctional Services denying petitioner's acceptance into the "family reunion program". ¶ On this appeal, an inmate at Auburn Correctional Facility and his alleged spouse have challenged the constitutionality and method of application of a departmental directive under which a "family reunion program" for inmates is administered by prison officials. The controversy arose because petitioners did not have a valid marriage license as required by directive No. 4500.* It appears that petitioners are members of a religious sect known as Religious Society of

* Department of Correctional Services directive No. 4500, dated November 20, 1980, entitled "Family Reunion Program", states: "The following family members are eligible to participate in the Family Reunion Program: 1. Legal Spouses — The husband or wife of the inmate and who is not him/herself a resident of a New York State Correctional Facility. Spouses must possess a valid marriage license" (§ II, subd D).

Families and, on June 20, 1963 in Cleveland, Ohio, participated in a witnessed marriage ceremony in which they assumed the names Calvin of Oakknoll and Mary of Oakknoll. Petitioners claim to have passed a blood test and obtained a marriage license from the county clerk, but returned it unsigned because no official performed the State-required solemnization. They lived together as husband and wife in both Ohio and New York State until November 17, 1980, when Calvin of Oakknoll was sentenced to 15 years to life upon his conviction of the crime of murder in Chautauqua County. On January 27, 1982, the family reunion program coordinator at Auburn Correctional Facility notified Calvin of Oakknoll that his request for conjugal visitation under the program was denied and that his application would be held until he produced an official marriage certificate. After exhausting the grievance procedures, petitioners commenced this CPLR article 78 proceeding seeking an order annulling respondent's determination on constitutional grounds, and further, on the ground that the determination was arbitrary and capricious. Petitioner Mary of Oakknoll alleged violation of her individual rights, distinct from those of her alleged spouse. Special Term dismissed the petition, finding neither a violation of constitutional guarantees nor error in respondent's administration of the program. We agree and affirm. ¶ Petitioners contend that respondent failed to employ the proper legal standard in assessing the validity of their spousal relationship, and rely on *Matter of Mott v Duncan Petroleum Trans.* (51 NY2d 289) to compel respondent to recognize their common-law marriage. The basic question in this case, however, is not whether petitioners have a common-law marriage valid in Ohio, but whether they satisfied the requirements of respondent's directive No. 4500 by producing a valid marriage license. Unlike *Matter of Mott (supra)*, resolution of the case does not require respondent to determine whether the alleged common-law marriage is valid. The record confirms that no license was produced, and that their request was denied for that reason. This result gives rise to two pivotal issues: whether directive No. 4500, as applied here, violates petitioners' State and Federal constitutional rights to marriage and freedom of religion, and, if not, whether the directive is nonetheless irrational. We find no infirmity in directive No. 4500 on either basis. ¶ While we recognize that the right to marry is one of fundamental dimension (*Loving v Virginia*, 388 US 1) and that an individual is not entirely deprived of constitutional protections when imprisoned for a crime (*Wolff v McDonnell*, 418 US 539, 555), an inmate's right to cohabit with his or her spouse is necessarily precluded by the exigencies and operational considerations of our penal system (see *Jones v North Carolina Prisoners' Union*, 433 US 119, 129-130; *Pell v Procunier*, 417 US 817, 822-823). Very plainly, there is no constitutional right to conjugal visitation within the State prison system. This is not an instance involving the rights of pretrial detainees to maintain family contact (see *Cooper v Morin*, 49 NY2d 69, 78-82, cert den 446 US 984), but concerns the rights of inmates involuntarily incarcerated for having been convicted of a crime (but see *Kozlowski v Coughlin*, 539 F Supp 852, 857). The State may, however, authorize conjugal visits as a privilege (see *Matter of Hongisto v Mercure*, 72 AD2d 850, 851). Where such a program is implemented in a reasonable manner, consistent with the inmate's status as a prisoner and the legitimate operational considerations of the institution, it will withstand judicial scrutiny (see *Pell v Procunier, supra*, pp 826-827). Here, the "marriage license" requirement of directive No. 4500 is intended to serve as a screening mechanism to prevent the reunion program from being inundated with inmate applications claiming persons to be their spouses without supporting documentation. Clearly, this requirement has a rational basis in that it promotes administrative convenience and efficiency by providing an operative standard for eligibility. ¶ Nor is it logical to argue that the free spouse is entitled to all

of those incidents of marriage available prior to the imprisonment of her husband. Such argument ignores the realities attendant the purposes and effects of incarceration. Further, it is quite plain that the directive is applied in a neutral fashion, without regard to the religious practices of the applicants, and does not abridge any First Amendment right to freedom of religion. Consequently, we find that Special Term properly dismissed the petition. In passing, we note that our decision does not prevent petitioners from seeking to obtain a declaratory judgment in either Ohio or New York declaring the validity of their common-law marriage, which judgment would serve to satisfy the criteria of directive No. 4500. ¶ Judgment affirmed, without costs. Mahoney, P. J., Casey, Weiss, Mikoll and Yesawich, Jr., JJ., concur.