In the Matter of JOHN DOE et al., Appellants, v THOMAS A. COUGHLIN, III, as Commissioner of the New York State Department of Correctional Services, et al., Respondents.—Per Curiam. Appeal from a judgment of the Supreme Court at Special Term (Kahn, J.), entered August 18, 1986 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondents denying participation in the Family Reunion Program at Auburn Correctional Facility.

Petitioner John Doe is currently serving an indeterminate

term of imprisonment of 5½ to 11 years at Auburn Correctional Facility. He will not be eligible for parole release consideration until January 1988 and will not be eligible for conditional release until May 1989. On July 6, 1985, during his period of incarceration, he married petitioner Jane Doe. In October 1985, petitioners were approved for participation in the Family Reunion Program,[1] and in November 1985 they completed a two-day visit. In December 1985, John Doe was diagnosed as having Acquired Immune Deficiency Syndrome (AIDS) and was placed in the hospital unit at Auburn where he has remained since.

Subsequent to such diagnosis, petitioners received information and counseling regarding AIDS from the Central New York AIDS Task Force. Jane Doe has continued to visit her husband but, because of the hospital setting, there is no privacy or physical contact possible. Accordingly, in February 1986, John Doe again applied for permission to participate in the Family Reunion Program. On February 28, 1986, the Family Reunion Coordinator denied the application. The only explanation given was "[r]easons of health". Upon administrative appeal, the Assistant Commissioner of Ministerial and Family Services upheld this determination and, finally, the Assistant Commissioner of Health Services clarified that the denial was based on the fact that John Doe was "diagnosed as having a communicable disease". Petitioners commenced this CPLR article 78 proceeding challenging respondents' determination. Special Term dismissed the petition and this appeal ensued.

Participation in the Family Reunion Program is not a right, but is a privilege, the granting of which is committed to the discretion of respondents (see, Matter of Mary of Oakknoll v Coughlin, 101 AD2d 931, 932). Since there was no adjudicatory hearing before the agency, this proceeding is in the nature of mandamus to review and the issue is whether respondents' determination had a rational basis such that it was not arbitrary or capricious (see, Matter of Savastano v Prevost, 66 NY2d 47, 50; Matter of Mobil Intl. Fin. Corp. v New York State Tax Commn., 117 AD2d 103, 106-107).

Petitioners contend that respondents' determination that AIDS is a communicable disease is irrational. They alterna-

---

1. The Family Reunion Program is designed "to provide selected inmates and their families the opportunity to meet for an extended period of time in privacy" (7 NYCRR 220.1). The individuals visit in a trailer located on prison grounds but outside of the main prison buildings.

tively argue that, even if AIDS is a communicable disease, it was arbitrary and capricious for respondents to deny them participation in the Family Reunion Program because John Doe has AIDS. Petitioners also contend that respondents' determination violated rights guaranteed by the Federal Rehabilitation Act of 1973 (29 USC § 794), the US Constitution and the NY Constitution.

Petitioners challenge respondents' findings that AIDS is a communicable disease on the ground that the Department of Health, which has expertise in matters of disease classification while the Department of Correctional Services does not, has not classified AIDS as a communicable disease, but, rather, as a "reportable" disease (10 NYCRR 2.1 [a]; 24-1.1). Respondents have promulgated regulations dealing with the Family Reunion Program which refer to communicable disease without defining such term. Absent some statutory or regulatory requirement, an agency is not required to define a term in its regulations in the same manner as another agency defines such term; the issue in this proceeding is whether the definition given the phrase by respondents has a rational basis. In the ordinary use of the term, a communicable disease is one which can be transmitted to another (see, Webster's New Collegiate Dictionary 225 [1981]). Certainly, it is not irrational to say that AIDS falls into this category.

However, whether AIDS is a communicable disease is not dispositive. The regulations do not provide that an inmate with a communicable disease cannot participate in the Family Reunion Program. The regulations have specific conditions that must be met for the inmate to be eligible, such as time of residence at the facility and good behavior record (7 NYCRR 220.3 [a], [b]). The regulations also provide that "[s]pecial review to determine eligibility will be conducted", if, for example, an inmate is a sex offender or parole violator, has outstanding warrants, is assigned to a closed mental hygiene unit or is diagnosed as having a communicable disease (7 NYCRR 220.3 [c]). While the regulations provide no specific guidelines as to what constitutes the "special review" accorded an applicant with a communicable disease, and little elaboration was provided in the review procedure described, the underlying basis for respondents' determination was clearly identified, viz., inmates with AIDS are precluded from participation in the Family Reunion Program. The issue thus distills to whether respondents' de facto policy of barring inmates afflicted with AIDS from participation in the Family Reunion Program has a rational basis.

Upon careful consideration, we find respondents' policy entirely rational. In so deciding, we are not unmindful that due to the incurable and terminal nature of AIDS, the bar is complete. This seemingly rigid result, however, is necessitated by the exigencies of this tragic disease, which recent studies confirm poses one of the foremost public health dilemmas of our era. AIDS has been characterized as epidemic in proportion (see, City of New York v New St. Mark's Baths, 130 Misc 2d 911, 912). While the medical evidence presented indicates that AIDS is not transmitted through casual contact and that certain "safe sex" practices can be pursued to reduce the risk of transmission, the medical studies in this record are, by their own terms, not definitive. The principal methods of transmission have been epidemiologically identified as direct exposure to blood and/or semen, but studies have also isolated an AIDS virus (human T-cell lymphotropic virus type III/lymphadenopathy-associated virus or HTLV-III/LAV) in saliva, tears, breast milk, urine and other body fluids, secretions and excretions.

The crucial point is that respondents cannot guarantee that the AIDS virus will not be transmitted should petitioners be allowed to participate in the Family Reunion Program, regardless of whether they engage in sexual contact. Even accepting the premise that safe sex practices may greatly reduce the risk of transmission, there is no medical confirmation that such risk can be entirely eliminated. Moreover, while epidemiologic studies of families of AIDS patients and health-care workers speak against transmission through casual contact (see, Matter of District 27 Community School Bd. v Board of Educ., 130 Misc 2d 398, 405-406), the possible risk of transmission from close contact with an AIDS sufferer remains an unresolved question of great concern. Nor, as a practical matter, are respondents adequately equipped to scrutinize the hygiene of the facilities utilized in the Family Reunion Program. Given the uncertainty and dire consequences attendant this disease, coupled with the operational exigencies and high-risk population of the State's prison system,[2] respondents' de facto policy of excluding AIDS victims

2. The record includes a recent demographic profile of this State's inmate population confirming the prevalence of AIDS within our correctional facilities. For example, in 1984 and 1985 more than 50% of inmate deaths were attributable to AIDS. Between the first confirmed mortality in 1981 and December 31, 1985, there have been 203 reported AIDS-related deaths in these facilities, compared to an estimated nationwide total of 765. One reason for this high incidence of correctional AIDS cases is that New York

from the Family Reunion Program cannot be deemed anything but rational.

We have examined petitioners' statutory and constitutional objections and find them unavailing. Section 504 of the Rehabilitation Act of 1973 prohibits discrimination against any "otherwise qualified handicapped individual * * * under any program or activity receiving Federal financial assistance" (29 USC § 794). The statute is program-specific and extends regulatory authority over the recipients of assistance as a quid pro quo for the funds received *(United States Dept. of Transp. v Paralyzed Veterans,* 477 US —, 106 S Ct 2705). As respondents point out, Federal financial assistance was received by the Department of Correctional Services in 1977 to implement the Family Reunion Program at several specific correctional facilities in this State. The Family Reunion Program at the Auburn facility, however, was not included in this grant and has not received Federal financial assistance. As such, the requirements of section 504 do not pertain here *(id.; see, Grove City Coll. v Bell,* 465 US 555; *cf. Arline v School Bd. of Nassau County,* 772 F2d 759, 762-763, *cert granted* — US —, 106 S Ct 1633 [Federal assistance placed in general revenue funds for entire school system]). In any event, having conceded that petitioner John Doe is a "handicapped person" within the meaning of section 504, respondents could rationally conclude that he was not "otherwise qualified" to participate in the program due to the gravity of this disease and the potential risk of transmission *(see, Doe v New York Univ.,* 666 F2d 761, 775, 777; *cf. Matter of District 27 Community School Bd. v Board of Educ.,* 130 Misc 2d 398, 413-415, *supra* [automatic exclusion from school of children with AIDS would violate their rights under Rehabilitation Act]). Nor is there any "constitutional right to conjugal visitation within the State prison system" *(Matter of Mary of Oakknoll v Coughlin,* 101 AD2d 931, 932, *supra).* Even assuming that John Doe is similarly situated to other inmates, the denial of petitioners' application to participate in the program was entirely rational and did not infringe on their right to equal protection of the law *(see, Cordero v Coughlin,* 607 F Supp 9, 10). Accordingly, the judgment of Special Term should be affirmed.

State has 35% of *all* AIDS cases nationwide, as reported by the National Center for Disease Control. Moreover, the majority of inmates come from the New York metropolitan area, shown to have an AIDS rate approximately four times higher than that in Los Angeles.

Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur. *[See,* 132 Misc 2d 709.]