Harry JUDD

v.

Ralph PACKARD, Warden, Maryland House of Correction; and Arnold Hopkins, Commissioner, Division of Correction.

Civ. A. No. S 87–1514.

United States District Court, D. Maryland.

Sept. 24, 1987.

Harry Judd, Mayo Correctional Institution, Fla., pro se.

J. Joseph Curran, Jr., Atty. Gen. of Md., and Glenn W. Bell, Asst. Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This case filed pursuant to 42 U.S.C. § 1983, seeking injunctive and monetary relief,[1] challenges the plaintiff's placement in Maryland prison hospital isolation units on three separate occasions while being tested for Acquired Immune Deficiency Syndrome (AIDS), AIDS related-complex (ARC), and the presence of HTLV–III antibodies, which are present in those with the two mentioned diseases and in those who, though not clinically ill with AIDS or ARC, have been exposed to their apparent causative agent, the AIDS retrovirus. This matter is before the Court on the parties' cross-motions for summary judgment. No oral hearing is deemed necessary. Local Rule 6, D.Md.

Because there is no genuine dispute as to any material fact, if a movant shows a clear entitlement to judgment in his favor as a matter of law, he is entitled to summa-

ry judgment. Fed.R.Civ.P. 56(c). The undisputed facts show that Judd escaped from Maryland confinement in 1979. He was in the custody of Florida officials from some time after his escape until September 19, 1985, when he was returned to Maryland custody. (On July 1, 1987, he was transferred back to Florida.) The record reflects that Judd suffered from various illnesses and weight loss between July, 1985 and October, 1985. On three separate occasions, while he was a Maryland prisoner, between October, 1985 and January, 1986, he was placed in medical (not custodial (*i.e.,* punitive or administrative)) isolation for testing, diagnostic, and treatment purposes. These were fairly brief periods, ranging from several days to less than six weeks.

Plaintiff indisputably tests positive for the HTLV–III antibody, and, thus, he either has AIDS, or an AIDS-related disease, or has been exposed to the virus. The gist of Judd's complaint is that each placing of him in isolation was an act of discrimination on the basis of a handicap, *viz.,* a positive HTLV–III test, and, consequently, a violation of his civil rights.

This Court is of the opinion that the defendants are entitled to summary judgment. Assuming for the purposes of this analysis that they personally participated in policy decisions that allowed for plaintiff's isolation, *see, e.g., Slakan v. Porter,* 737 F.2d 368 (4th Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985), the defendants engaged in no conduct violative of any right secured to plaintiff by federal statute or the United States Constitution. Thus, he has asserted no claim under 42 U.S.C. § 1983.

Because Judd has not alleged or demonstrated any nexus between the allegedly discriminatory conduct of the defendant prison officials and a specific program receiving federal funding, he has no claim under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794. *Consolidated*

---

1. Plaintiff's release from Maryland prison custody moots his claim for injunctive relief. *In-*

*mates v. Owens,* 561 F.2d 560 (4th Cir.1977).

*Rail Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984); *Doe v. Coughlin,* 132 Misc.2d 709, 505 N.Y.S.2d 534, *aff'd,* 125 A.D.2d 783, 509 N.Y.S.2d 209 (1986), *leave to appeal granted,* 69 N.Y.2d 612, ⸺ N.Y.S.2d ⸺, 511 N.E.2d 86 (1987). Thus, Judd has alleged no statutory claim cognizable under 42 U.S.C. § 1983.

■ Turning to Judd's constitutional arguments, the Court first notes that official discrimination against handicapped individuals (adopting for this purpose a broad definition of "handicapped," and assuming that plaintiff fits within it, *cf. School Board of Nassau County v. Arline,* ⸺ U.S. ⸺, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)), is not invidious discrimination, and thus, it is not subject to strict or heightened judicial scrutiny. *D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474, 1486–87 (7th Cir.1985). *See also Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Thus, the applicable constitutional standard is whether the challenged official action has a legitimate purpose and whether it was rational for the actors to believe that the treatment afforded the individual would promote that purpose. *See Baltimore Gas & Electric Co. v. Heintz,* 760 F.2d 1408, 1417 (4th Cir.), *cert. denied,* 474 U.S. 847, 106 S.Ct. 141, 88 L.Ed.2d 116 (1985); *see also Cleburne,* 473 U.S. at 442, 105 S.Ct. at 3255–56.

■ Certainly, this Court can take judicial notice (*see* Fed.R.Evid. 201) of the fact that AIDS poses an almost unprecedented danger to the public health of this country and the world. Much is still unknown about AIDS, but any serious-minded individual can readily appreciate its potential for causing a plague of (or beyond) Biblical proportions. Furthermore, the danger of AIDS is heightened in the closed community of a penal institution, where carriers of the HTLV–III virus may readily transmit it, whether wittingly or unwittingly, to other inmates, through homosexual encounters or otherwise. Thus, the diagnosis, identification, and treatment of potential AIDS carriers, as part of a program of

AIDS prevention, certainly has a legitimate purpose, especially in the prison setting. Furthermore, it is perfectly reasonable to isolate suspected carriers medically for diagnostic and treatment purposes, in a prison hospital setting. In this regard, medical judgment such as was exercised in this case should be respected. *Cf. Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975).

Because all the isolations in this case were medically directed, the Court need not decide here whether AIDS patients or those testing positive for HTLV–III antibodies may be segregated by administrative *fiat,* rather than by medical order. But, the Court notes that the respect constitutionally due prison officials' discretion in matters of prison administration would certainly counsel that courts give great weight to administrators' determinations regarding isolation and segregation of infected and exposed inmates. *See* cases collected and analyzed in *Turner v. Safley,* ⸺ U.S. ⸺, 107 S.Ct. 2254, 2259–62, 96 L.Ed.2d 64 (1987). In fact, it may well be that prison officials might face a § 1983 suit for failing to isolate a known AIDS patient or carrier, if the carrier infects another inmate who could show that such failure to isolate constituted grossly negligent or reckless conduct on the part of such officials. *See Withers v. Levine,* 615 F.2d 158 (4th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980). *But see Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (no liability for mere negligence).

In short, the conduct complained of here violated no federal constitutional or statutory right for which recovery of damages may be had under 42 U.S.C. § 1983. Thus, the defendants are entitled to summary judgment. Fed.R.Civ.P. 56(c). A separate order so providing will be entered. Fed.R.Civ.P. 58.