**Jeffrey DOE, and Maryland Association for Children and Adults with Learning Disabilities, Inc.**

v.

**Charles HEATHERLY, Acting Administrator, United States Small Business Administration, in his official capacity Wilfredo J. Gonzales, Associate Administrator for Minority Small Business and Capital Ownership Development, United States Small Business Administration, in his official capacity.**

**Civ. A. No. S–86–1698.**

United States District Court, D. Maryland.

Oct. 15, 1987.

---

Leslie Seid Margolis, Steven Ney, Andrew Penn, Maryland Disability Law Center, Baltimore, Md., for plaintiffs.

Breckinridge L. Willcox, U.S. Atty., Joyce K. McKee, Asst. U.S. Atty., U.S. Courthouse, Baltimore, Md. (John J. Sharp, Office of Litigation, Small Business Adm'n., Washington, D.C., of counsel), for defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This matter is pending on the motion of defendants for summary judgment, which has been responded to by the plaintiff. No oral hearing is necessary on the legal issues. Local Rule 6, D.Md. It appears, for reasons to be stated *post,* that only legal issues are involved and there are no genuine disputes of material fact. Therefore, if the movants are clearly entitled to judgment in their favor as a matter of law, summary judgment may be entered. Fed. R.Civ.P. 56(c).

The cardinal issue is the propriety of the Small Business Administration's (SBA's) denial of plaintiff's participation in the Section 8(a) program of the SBA, designed to help socially and economically disadvantaged proprietorships, by giving them preferential treatment in obtaining government contracts. *See* 15 U.S.C. § 637(a). The plaintiff suffers from the handicaps of calligraphic dysgraphia and dyslexia. These cause the plaintiff to reverse numbers and letters when writing and reading. Undoubtedly, this has made it more difficult for him to carry on his business as an excavating contractor then would have been the case had he not been burdened with these impairments. In applying its regulatory criteria for determining "social disadvantage," which mirror statutory language, *compare* 13 C.F.R. Section 124.1–1(c)(3) (1985) *with* 15 U.S.C. § 637(a)(5), the SBA determined that the plaintiff was not "socially disadvantaged." Interestingly, plaintiff has proffered to the Court that he once had many more government contracts, and that he has, in recent years, lost considerable government work to Section 8(a) firms.

The facts relevant to the agency's action on the plaintiff's application are not disputed, although the legality of that action is. There is, therefore, no need for this Court to hold any evidentiary trial or hearing. Upon review of the entire record, the Court finds that the agency's final action denying plaintiff's application for Section 8(a) status on the basis of lack of "social disadvantage" is unassailable on any basis advanced by the plaintiff.

Nothing in the Constitution compels plaintiff's entitlement to Section 8(a) benefits, and there is no Constitutional imperative that requires heightened scrutiny of

governmental actions solely because a disabled person is affected. *See Judd v. Packard,* 669 F.Supp. 741 (D.Md.1987), and cases cited therein. Certainly, the plaintiff received adequate procedural due process in the administrative proceedings in this case. Hence, there is no Constitutional claim stated.

Review of the record also shows that the agency's action was not *ultra vires,* arbitrary, capricious, unsupported by fact, an abuse of discretion, or otherwise not in accord with the law. Thus, it withstands judicial review under the Administrative Procedure Act, 5 U.S.C. § 706(2). *See, e.g., Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

The statute by which the SBA is empowered to help socially and economically disadvantaged proprietorships defines "socially disadvantaged individuals" as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." The administrative record indisputably shows that the plaintiff has not been subjected to any racial or ethnic prejudice. If he is to claim the benefits of 15 U.S.C. § 673(a), he must, then, have demonstrated that he was subject to cultural bias because of his identity as a member of a group, without regard to his individual qualities. 15 U.S.C. § 637(a)(5). He produced insufficient evidence before the agency to show that there is a general or specific bias in American culture against the learning disabled that stems from their status as disabled persons, rather than from the results of that status as manifested by its effects on their ability to read and write. It may certainly be true that learning disabled persons do not succeed in school or in business as well as those who are not learning disabled, but this inequality of result stems from their inability to perform the writing-based tasks essential to business success (*e.g.,* letter writing and bid compilation) with that degree of alacrity of which their non-disabled competitors are capable. Plaintiff produced no evidence before the agency that either he personally or his group in general

is or was discriminated against because they are *perceived* with a cultural prejudice or bias by American society or any significant segment thereof, on account of the fact of their disability. In short, the inequality plaintiff suffers in competitive position is an unfortunate result of the nature of the handicap itself, rather than of society's attitude towards it. In fact, the clear thrust of plaintiff's submission to the agency was that his teachers and, later, his business contacts were ignorant of the fact of his impairments and of their effects, ascribing his poor performance in written tasks to ineptitude, rather than to impairments. Though lamentable, this ignorance does not equate with the bias Congress sought to ameliorate in enacting Section 8(a)'s requirements for showing "social disadvantage." 15 U.S.C. § 637(a)(5). Therefore, the SBA quite properly found that the plaintiff was ineligible for Section 8(a) treatment on the basis of his failure to demonstrate "social disadvantage" under 15 U.S.C. § 637(a)(5) and 13 C.F.R. § 124.1–1(c)(3)(i) and (iii)(B).

█ Finally, the plaintiff claims that this determination by the SBA violated a provision of the Rehabilitation Act of 1973 as amended, *viz.* 29 U.S.C. § 794. This Court will assume that the plaintiff's impairments qualify as handicaps for the purpose of the Rehabilitation Act. Nevertheless, he has failed to show that the Act applies in this situation, for at least two reasons. First, in light of the foregoing discussion, he has not demonstrated that he was "otherwise qualified" for inclusion in the Section 8(a) program. Second, even if he were "otherwise qualified," his exclusion was not "solely by reason of his handicap...." Rather, his exclusion was because the nature of his handicap was not such as to qualify him for enrollment in the Section 8(a) program under criteria enacted by Congress. In short, he suffered no *discrimination* in his treatment by the SBA that was *attributable* to his handicap, and it would stand both the Section 8(a) statute and the Rehabilitation Act on their heads if this Court were to read the Rehabilitation Act as *mandating* a finding by the SBA of

social disadvantage under Section 8(a) in the case of every person who is handicapped. If Congress had intended this result, Section 8(a) would have been written in such a way as to achieve it, and the Rehabilitation Act obviously does not "amend" Section 8(a) so as to require such a result.

For the reasons stated, it follows that the plaintiff is entitled to no relief in this Court, and, consequently, he has no claim for damages or injunctive relief. Therefore, an order will be entered separately, granting defendants' motion for summary judgment, each side to bear its own costs.