Melvin McDUFFIE, Plaintiff,

v.

RIKERS ISLAND MEDICAL DEPARTMENT; New York Medical College; Medical Department Downstate C.F.; and Stephen Dalshein, Superintendent, Downstate, C.F., Defendants.

No. 86 Civ. 5191 (RWS).

United States District Court, S.D. New York.

Sept. 4, 1987.

Melvin McDuffie, Plaintiff Pro Se Fishkill, N.Y.

Peter L. Zimroth, Corp. Counsel of the City of New York, New York City, for Municipal defendants; Barbara S. Finger, Asst. Corp. Counsel, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for State defendants; David Cook, Asst. Atty. Gen., of counsel.

## OPINION

SWEET, District Judge.

Plaintiff *pro se* Melvin McDuffie ("McDuffie") has brought this civil rights action under 42 U.S.C. § 1983 against defendants Rikers Island Medical Department ("RIMD")[1], the New York Medical College ("NYMC"), the Medical Department at Downstate Correctional Facility ("Downstate"), and Stephen Dalsheim ("Dalsheim"), the superintendent at Downstate. McDuffie seeks $20,000,000 in compensatory damages for the hardship he suffered on account of defendants' alleged medical malpractice. McDuffie asserts that he was misdiagnosed as having acquired immune deficiency syndrome ("AIDS") and that RIMD communicated his diagnosis to officials at Downstate, where he was wrongly held in segregated housing for five months. Each of the defendants has moved this court to dismiss this claim pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim or, alternately, pursuant to Fed.R.Civ.P. 12(h)(3) for lack of subject matter jurisdiction. Upon the following facts and conclusions, defendants' motions are granted and the case is dismissed with leave granted for McDuffie to replead within thirty (30) days.

### The Pleadings

McDuffie's complaint asserts that in August 1982 he underwent two skin biopsies at the Westchester County Medical Center ("Center").[2] The results of the biopsies were consistent with a diagnosis of Karposi's Sarcoma, a form of cancer common to AIDS patients. It is not clear from McDuffie's pleadings whether NYMC, the Center or a third party made this diagnosis. McDuffie's complaint alleges next that on December 5, 1985, a letter stating that McDuffie was suffering from AIDS was sent from RIMD, where McDuffie had temporarily been an inmate, to Downstate, where McDuffie was transferred. McDuffie asserts that because of this letter he was placed in segregation for five months until April 21, 1986 when a letter addressed to a Dr. Miller, Chief of the Medical Department at Downstate, arrived from NYMC stating, "Since he does not have AIDS, we do not recommend isolation or segregation of Mr. McDuffie from the rest of the population." Shortly thereafter McDuffie filed this complaint.

Defendants contend that McDuffie has failed to state a cognizable § 1983 claim because their alleged conduct does not rise to the level of a constitutional violation. Of course, for the purposes of this motion to dismiss, all of McDuffie's allegations set forth above are accepted as true. *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). Further, inasmuch as McDuffie's complaint was filed *pro se*, this court will hold it to a less rigorous standard than normally applicable and thus will dismiss it only if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### The Constitutional Claim

In *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), the

---

1. Medical services at the Rikers Island Hospital are provided by the New York City Department of Health's Prison Health Services, incorrectly identified in plaintiff's complaint as Rikers Island Medical Department.

2. Although the relationship between the Westchester County Medical Center and the New York Medical College has not been clarified for the court, it appears that pursuant to an "Affiliation Agreement" between Westchester County and NYMC, the County has agreed to defend and indemnify NYMC with respect to this action. Although McDuffie does not assert, and NYMC denies, that he was ever treated or examined at NYMC, apparently NYMC sent a letter dated April 21, 1986 to Downstate informing the latter that McDuffie did not have AIDS and recommending that he be placed in general population. Although it does not appear from the record at whose request this letter was sent, the existence of the letter helps explain NYMC's presence as a defendant in this lawsuit.

Supreme Court held that "deliberate indifference to serious medical needs of prisoners [is] proscribed by the Eighth Amendment." Nonetheless, every instance of medical malpractice that occurs within the confines of a correctional facility does not constitute a constitutional violation. *Id.; Church v. Hegstrum,* 416 F.2d 449 (2d Cir.1969). Consequently, to present a § 1983 claim, McDuffie "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble, supra* at 106, 97 S.Ct. at 292. Upon the record before this court, McDuffie has failed to make such allegations.

McDuffie does not dispute that the results of his 1982 skin biopsies at the Center indicated that he might have Kaposi's Sarcoma. Although McDuffie does not directly allege who made this diagnosis, it is assumed that it was made by either NYMC or the Center. How this diagnosis came to the knowledge of the medical department at Rikers Island over three years later is not established, but again it is fair to infer that McDuffie's medical records at Rikers Island contained a diagnosis of AIDS and that this information was relayed to Downstate upon McDuffie's transfer to that facility in December 1985. Acting on this information, officials at Downstate placed McDuffie in segregation.

McDuffie has not alleged that he suffered any physical harm due to the misdiagnosis nor that medical officials at the Center, NYMC, RIMD or Downstate deliberately ignored his serious medical needs. At most, McDuffie has alleged that officials at NYMC took three and one-half years to correct their misdiagnosis and that officials at RIMD and Downstate wrongly relied on the misdiagnosis in placing him in segregation for five months. Given the lack of medical knowledge about AIDS in 1982 and the fact that a test for the AIDS virus was not discovered before early 1985, these facts fail to establish that NYMC's diagnosis of AIDS was grossly negligent.

The right of prison administrators to segregate inmates with AIDS has been upheld against challenges based on the First, Eighth and Fourteenth Amendments. *See Cordero v. Coughlin,* 607 F.Supp. 9 (S.D. N.Y.1984). The issue potentially before this court is the degree of care that prison officials must exercise in confirming a medical diagnosis of AIDS before segregating an inmate. However, without more information as to the medical attention, or lack thereof, that McDuffie received at RIMD and Downstate, this court declines to determine whether those two facilities were grossly negligent in relying on medical records from NYMC.

In sum, McDuffie's allegations thus far fail to make out a claim of deliberate indifference to serious medical needs on the part of the defendants. Accordingly, his complaint is dismissed for failure to state a claim upon which relief can be granted, with leave to replead within thirty (30) days.

IT IS SO ORDERED.