**Rafael BAEZ, Plaintiff,**

v.

**Dr. Lowell RAPPING; Warden, Joseph Stancari; and Westchester County Jail Medical Staff, Defendants.**

**No. 87 Civ. 6792 (RWS).**

United States District Court, S.D. New York.

Feb. 10, 1988.

Rafael Baez, plaintiff pro se.

Henry J. Logan, Westchester Co. Atty., White Plains, N.Y., for defendants; by Richard B. Liebowitz, Asst. Co. Atty., of counsel.

## OPINION

SWEET, District Judge.

Defendants Westchester Medical Director Dr. Lowell Rapping ("Rapping"), warden of the Westchester County Jail Joseph Stancari ("Stancari"), and the Westchester County Jail Medical Staff ("the Medical Staff") have moved to dismiss the 42 U.S.C. § 1983 *pro se* complaint of plaintiff Rafael Baez ("Baez") for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Fed.R. Civ.P., or in the alternative for summary judgment pursuant to Rule 56, Fed.R. Civ.P. For the reason set forth below, the defendants' motion for summary judgment is granted in part and denied in part.

### Facts

On May 12, 1987, Baez was arrested on burglary charges and taken to Westchester County Jail ("the Jail") where he was held as a detainee. He subsequently pleaded guilty to charges of third degree burglary and presently maintains detainee status in the Jail pending sentencing.

Shortly after his admission to the jail, Baez was hospitalized for a blood clot in his right leg. While in the hospital, he was subjected to a number of routine blood tests. One of these tests, according to defendants, revealed the presence of the AIDS virus. Thus, upon his return to the Jail, the Hospital issued a medical precaution sheet to the Westchester County Department of Correction concerning the necessity of the avoidance of Baez's body fluids. The precaution sheet does not specifically state that Baez tested positive for AIDS.

According to Baez's complaint, "the news of [his] blood clot has been transformed into AIDS verbally by the medical staff." He claims that the staff spread

such "rumors" to individuals that were not authorized to have this information, and that as a result he has been discriminated against. According to Baez, he has been kept segregated because of his "condition," and has been denied access to court, to the law library, to church, and to recreation facilities. In all, Baez claims that he was "subjected to cruelty by the medical department at the Jail ... subjected to 'keep-lock' for no reason ... [and that] because [he is] Spanish and speak[s] very little English [he is] being deprived of the rights that other inmates receive." Although not expressly, Baez presumably claims a violation of his rights under 42 U.S.C. § 1983.[1]

### Discussion

In deciding a motion for summary judgment,[2] a court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Since Baez is proceeding *pro se*, he "is entitled to a certain liberality with respect to procedural requirements." *Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108, 1112 (2d Cir.1977); *see also McDuffie v. Rikers Island Medical Department*, 668 F.Supp. 328, 329 (S.D.N.Y.1987). Thus, this court will look to the *pro se* complaint to determine whether Baez has set forth a legal claim that is the subject of a factual dispute.

 In this case, the defendants, as state prison and medical officials, are entitled to qualified immunity from suit. As the Supreme Court has stated "[a]lthough the Court has recognized that in enacting § 1983 Congress must have intended to expose state officials to damage liability in some circumstances, the section has been consistently construed as not intending wholesale revocation of the common-law immunity afforded government officials." *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978).

The Court has explained qualified immunity as

> in varying scope ... available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

*Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974). Such immunity is available, for example, to prison officials, *Procunier, supra*, 434 U.S. 555, 98 S.Ct. 855, and to state hospital superintendents, *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Thus, it is available in this case if the defendants have acted within the bounds of that immunity.

An official is not entitled to immunity if he

> "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [individual] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [individual]." ... The official cannot be expected to predict the future course

---

1. Section 1983 reads:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity or other proper proceeding for redress....

2. Defendants have submitted affidavits in support of their motions. Thus, the motion to dismiss for failure to state a claim will be treated as a motion for summary judgment. *See* Rule 12(b), Fed.R.Civ.P.

constitutional law, ... but he will not be shielded from liability if he acts "with such disregard of the [individual's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith."

*Procunier, supra,* 434 U.S. at 562, 98 S.Ct. at 860 (quoting *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975)) (citations omitted).

Based on these standards, Baez has not stated a cause of action against Dr. Rapping nor against any medical staff.[3] Examining a prisoner and reporting the condition of the prisoner to the facility in which he is incarcerated is certainly within the scope of Dr. Rapping's official duties. Indeed, failure to issue a warning to prison officials to avoid contact with the body fluids of an AIDS carrier might itself be deemed a failure to perform official duties.

Although not explicitly, Baez's complaint suggests that he denies having AIDS. Thus, he claims that Dr. Rapping's "rumors" are the source of discrimination against him. However, he cannot, on these allegations alone, sustain a cause of action against the doctor pursuant to section 1983. First, Baez presents nothing to contradict the sworn affidavit testimony of Dr. Rapping that the prisoner indeed does have AIDS. Moreover, even if Dr. Rapping were lying, this lie must reach constitutional magnitude to overcome the doctor's qualified immunity. It does not reach that level. At worst, such a statement would amount to libel *per se,* a state common law cause of action. *See* Restatement (Second) Torts § 572. Baez could not assert a constitutional right of privacy in a case such as this, as prisoners, by virtue of their status, are only entitled to limited privacy

rights. *See Bell v. Wolfish,* 441 U.S. 520, 545–47, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979); *Miles v. Bell,* 621 F.Supp. 51, 67 (D.Conn.1985). Those rights are not infringed when a medical director reports the condition of an inmate in the most limited way possible[4] to the corrections department.

■ The case against Stancari, however, is stronger. He is responsible for maintaining Baez in keep-lock. Presumably it is this confinement that has, according to the complaint, restricted Baez's ability to use the facilities.[5]

■ The Supreme Court has held that administrative segregation, segregation imposed for administrative and generally not punitive reasons, "is something of a catchall," and is "the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864–70, 74 L.Ed.2d 675 (1983); *see also Morrison v. Lefevre,* 592 F.Supp. 1052 (1984). However, while the *Hewitt* Court determined that such confinement did not by itself implicate an interest protected by the due process clause, it went on to hold that a state could enact certain regulatory measures whereby a liberty interest is indeed created, and that if such measures exist, some process, however minimal, is due. *Id.* at 469–72, 103 S.Ct. at 870–72. Under New York law, due process is available to those held for more than twenty-four hours in administrative segregation for disciplinary reasons. *See* 9 NYCRR § 7006.1(b)(3).

It is Stancari's contention that Baez has been segregated not because of his condition, but because of his "deviant behavior." The New York Code of Rules and Regula-

---

**3.** The defendants claim that there is no such entity as the Westchester County Jail medical staff. Even if such a staff did exist, they, as agents of Dr. Rapping, would be entitled to the same immunity as the Medical Director.

**4.** It will be recalled that the report did not explicitly state that Baez had been exposed to AIDS but only recommended avoiding contact with body fluids.

**5.** Defendants claim that Baez's ability to sue for use of library facilities in particular is res judi-

cata in that a previous class action where present and future detainees at the Westchester County Jail were represented determined this issue. However, the judgment merely states that detainees are to be provided with access to legal reference materials in accordance with 9 NYCRR §§ 7031.4–7031.6. If Baez is being denied such access, he has a right to sue on the judgment. This court, having jurisdiction on the federal claim, can thus exert pendant jurisdiction.

tions does contemplate administrative segregation for deviant behavior. 9 NYCRR § 7006.1(b). However, a prisoner who is so confined is entitled to minimal due process protections, for example to be informed of the charges against him and to have a hearing. *McKinnon v. Patterson,* 568 F.2d 930, 936 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Wilkinson v. Skinner,* 34 N.Y.2d 53, 312 N.E.2d 158, 356 N.Y.S.2d 15 (1974); *see also Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). Indeed, under the New York Code of Rules and Regulations, a detainee must be given notice of the reason for discipline and must be given the opportunity to be heard. 9 NYCRR § 7006.1(c).

No evidence has been presented by either party to suggest that Baez has either been given notice of the reason for his confinement or an opportunity to be heard. Defendants' moving papers merely state parenthetically that Baez "arrangement" is "reviewed weekly by the Department of Correction." In light of this, summary judgment cannot be granted in favor of Stancari, for there is certainly a question of fact as to whether Baez has been deprived of entitled liberty rights without due process of law.[6]

■ Baez has presented no factual issue with regard to discrimination based on race or national origin, however. He merely makes the unsubstantiated claim that he is deprived of "rights that other inmates receive"—without specifying what those rights are and without stating which inmates receive them—because he is Spanish. Presumably, Baez is claiming that the state prison officials deprived him of equal protection of the laws in violation of section 1983. However, such bare allegations cannot defeat a motion for summary judgment. In the absence of disputed facts, and no facts at all are presented by Baez, the motion for summary judgment will be granted on this claim.

■ Finally, defendants claims that punitive damages may not be awarded in this case because they acted within the scope of their offices. In general, only compensatory damages are available in section 1983 cases. However, "[t]his is not to say that exemplary or punitive damages might not be awarded in a proper case under § 1983 with the specific purpose of deterring or punishing violations of constitutional rights" or "when there is a malicious intention to deprive [plaintiffs] of their rights." *Carey v. Piphus,* 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252 (1978). Baez's complaint suggests that he may be the victim of malicious and discriminatory treatment because of his condition. Whether or not such malice exists is a question of fact. Thus, the punitive damage claim will not be dismissed.

### Conclusion

Defendants' motion for summary judgment will be granted dismissing the complaint as to Dr. Rapping and as to the Westchester County Medical Staff. The motion is denied as to Stancari except as it relates to the issue of discrimination based on race or national origin.

IT IS SO ORDERED.

---

**6.** As this court noted in a recent decision "[t]he right of prison administrators to segregate inmates with AIDS has been upheld against challenges based on the First, Eighth and Fourteenth Amendments." *McDuffie, supra,* 668 F.Supp. at 330. However, Baez is entitled to know if AIDS is the true reason for his segregation so that he may challenge the conditions of such confinement if indeed reasons for challenge exist.