David DOE, et al.,

v.

**Larry R. MEACHUM, et al.**

**Civ. No. H–88–562 (PCD).**

United States District Court,
D. Connecticut.

Dec. 6, 1988.

Shelley Geballe, Martha Stone, Connecticut Civ. Liberties Union Foundation, Hartford, Conn., J.L. Pottenger, Jr., and Jerome N. Frank, Legal Services Organization, New Haven, Conn., for plaintiffs.

Stephen O'Neill, Steve Strom, and Richard Couture, Asst. Attys. General, Hartford, Conn., for defendants.

v.

**Larry R. MEACHUM, et al.**

**Civ. No. H–88–562(PCD).**

United States District Court,
D. Connecticut.

Nov. 22, 1988.

Shelley Geballe, Martha Stone, Connecticut Civ. Liberties Union Foundation, Hartford, Conn., J.L. Pottenger, Jr., Jerome N. Frank Legal Services Organization, New Haven, Conn., for plaintiffs.

Stephen O'Neill, Steve Strom, Richard Couture, Asst. Attys. Gen., Hartford, Conn., for defendants.

### RULING ON OBJECTION TO MAGISTRATE'S RULING AND PROTECTIVE ORDER

DORSEY, District Judge.

■ Defendants seek review of the magistrate's ruling granting, in part, plaintiffs' motion for a protective order.[1] The ruling of a magistrate on a discovery motion will be set aside only if "found to be clearly

---

1. Before entering the protective order, the magistrate had the benefit of extensive briefing and oral argument. Defendants have not submitted an additional memorandum in support of their objections, but rely on their earlier brief.

erroneous or contrary to law." Rule 2(b), Local Rules for U.S. Magistrates. *See* Fed. R.Civ.P. 72(a). Thus, on review of the entry of a protective order, it need only be shown that there was a substantial basis for a finding of "good cause" to support such an order under Fed.R.Civ.P. 26(c) and that the magistrate did not abuse her discretion in framing an appropriate order. *See, e.g., Sherrell Perfumes, Inc. v. Revlon, Inc.,* 77 F.R.D. 705, 707 (S.D.N.Y. 1977).

*Discussion*

■ Plaintiffs sought and the magistrate ordered only limits to the use of inmate names and personally-identifiable information obtained *from plaintiffs* through discovery. *See* Protective Order (the "Order"), ¶ 1. Thus, the Order affects only information created in the course of the litigation and does not limit defendants' use of their own files and records, nor of information obtained from independent sources. The Order permits disclosure of inmate identities:

(a) to the named defendants to the extent necessary to litigate this case; and

(b) to other persons upon notice to plaintiffs' counsel and application to the court; or

(c) for exigent penal or law enforcement purposes.

■ Defendants argue that plaintiffs made no showing that such information would be disseminated contrary to the safety or privacy interests of plaintiffs. However, the magistrate had before her the complaint, verified by affidavits, alleging that information about the suspected or actual status of inmates as HIV carriers has already been widely disseminated, Complaint, ¶¶ 33, 37–38; Exhibit B; Exhibit I, and that this dissemination has resulted in harassment and sometimes violence directed at plaintiffs. Complaint, ¶¶ 56–59. Regardless of defendants' professional obligations, care, and good intentions, plaintiffs are entitled to protection from the possibility that their own lawsuit will worsen the alleged conditions for which they seek redress. Moreover, in evaluating the danger to plaintiffs, the magistrate was entitled to rely on her familiarity with prison conditions gained from past experience in prisoners' litigation. Her finding that plaintiffs have a significant privacy interest in their identities as HIV victims, when revealed in their own responses to discovery, is reasonable. *See Doe v. Coughlin,* 697 F.Supp. 1234 (N.D.N.Y.1988), Memorandum Decision at 10 (recognizing privacy interest in non-disclosure of AIDS diagnosis).

Defendants also object to the terms of the Order as an unwarranted intrusion on their ability to prepare a defense and to administer the prison system. Defendants do not, however, suggest an alternative order which would accomplish the level of protection found warranted by the magistrate. Their defense is not shown to be compromised by the Order. Administration of the prison system is not shown to be dependent on information obtained in these proceedings.

■ The burden lies upon defendants to show that the Order was an abuse of discretion. *See Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir.1973). Defendants' various hypothetical situations, under which they contend the Order would hinder their defense or prison administration, are simply straw men. For example, defendants contend that the Order hinders prison administration because it "seems to preclude" dissemination of information about an inmate's propensity for assaultive behavior or escape. However, civil discovery is not intended to be an aid to defendants' administration of the prisons, but to permit the full and fair litigation of this action without surprise. If there were no lawsuit, there would be no discovery responses and defendants would have to operate the correctional system without information generated by plaintiffs in discovery. Moreover, it is not shown that information about an inmate's propensities obtained from plaintiffs would be more current, reliable, or complete than that otherwise available from defendants' own sources which are not restricted in any fashion. In the rare circum-

stances where plaintiffs' discovery reveals material of immediate penal or law enforcement value, the magistrate's Order permits disclosure without prior notice or approval, providing that in the event of such disclosure plaintiffs' counsel is notified "as expeditiously as possible." Such exceptions are broad enough to accommodate defendants' concerns, but if they are not, in particular circumstances, defendants can then seek a modification of the Order.

Contrary to defendants' claims, nothing in the Order compels defendants to share with plaintiffs' counsel the results of defendants' investigation relative to this action. To the extent that the Order requires defendants to give notice to plaintiffs' counsel before revealing identity information to potential witnesses or expert consultants, only the names of witnesses will be revealed and not the substance of the contacts. Once plaintiffs have agreed to, or the court has approved, disclosure to a particular person, and that person has signed an acknowledgment of the Order, independent approval need not be sought for subsequent disclosures to that person. There is no showing that that procedure is burdensome or onerous.

For the foregoing reasons, and because defendants have not shown that the magistrate's ruling was clearly erroneous or contrary to law, the objections to the ruling are overruled and the ruling is affirmed and adopted.

SO ORDERED.

## RULING ON PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

JOAN GLAZER MARGOLIS, United States Magistrate.

On August 15, 1988, plaintiffs filed their thirty-five page complaint, challenging various practices of defendants with respect to the handling of inmates with Acquired Immune Deficiency Syndrome ("AIDS"), AIDS–Related Complex, or other Human Immunodeficiency Virus (collectively referred to as "AIDS"). That same day, Judge Cabranes granted plaintiffs' motion to prosecute this suit in fictitious names.

On October 11, 1988, plaintiffs filed a motion for protective order, brief in support, and proposed order, which seeks to place strict parameters on defendants' ability to disclose the identities of the named plaintiffs and putative class members. On October 21, 1988, defendants filed their brief in opposition, which argues that the proposed order would gravely jeopardize the security of the state correctional system and would infringe upon defendants' ability to defend this lawsuit. Plaintiffs' reply brief was filed on October 25, 1988.[1] Oral argument was held on October 27, 1988. For the reasons stated herein, plaintiffs' motion is granted in part.

While several decisions have upheld the right of prison officials to identify and isolate suspected AIDS carriers, e.g., Baez v. Rapping, 680 F.Supp. 112, 115 (S.D.N.Y. 1988); Judd v. Packard, 669 F.Supp. 741, 743 (D.Md.1987); Cordero v. Coughlin, 607 F.Supp. 9, 10 (S.D.N.Y.1984), at least one court has recognized that an inmate infected with AIDS has a constitutional right to privacy in his medical records. Woods v. White, 689 F.Supp. 874, 876 (W.D.Wis. 1988). This Court need not resolve whether an inmate's privacy rights here rise to the level of a constitutional one, for defendants do not object to the imposition of a protective order per se, but rather to the restrictive nature of the one proposed by plaintiffs.

The court agrees that the proposed order is more restrictive than is necessary, even taking into account the significant interests of the plaintiffs in keeping their illness as confidential as possible. Accordingly, the Magistrate will enter the protective order attached hereto.

See 28 U.S.C. Section 636(b) (written objections to ruling must be filed within ten days after service of same); F.R.Civ.P. 72; Rule 2 of the Local Rules for United States

---

1. The three briefs collectively were seventy-four pages long; oral argument lasted for one hour. The Court hopes that in the future such substantial energy can be used to resolve similar matters in a more amicable fashion.

Magistrates, United States District Court for the District of Connecticut.

## PROTECTIVE ORDER

JOAN GLAZER MARGOLIS, United States Magistrate.

In order to protect the privacy of inmates involved in this action and to safeguard them from harassment and retaliatory actions, all responses to discovery which include inmate names or personally-identifiable information about inmates shall be treated in the following manner:

1. Inmate names and personally-identifiable information about inmates obtained through discovery shall be disclosed only to defendants' counsel herein, and such information shall not be redisclosed by defendants' counsel except as provided below.

2. Attorneys for the defendants may disclose the identities of inmates involved in this action to the named defendants, but only to the minimum extent necessary to litigate this case.

3. Should attorneys for the defendants have a demonstrated need to disclose the identities of such inmates to persons other than the named defendants, they shall give appropriate notice to plaintiffs' counsel. If, within two (2) business days of such notice, plaintiffs' counsel fails to give approval to such disclosure, defendants' counsel shall file an appropriate application with this Court.

4. Any person to whom disclosure is to be made pursuant to paragraphs 2 and 3 of this Order shall first read this Protective Order, shall be strictly bound by the obligation not to redisclose such inmate names and other personally-identifiable information about inmates to the extent provided herein, and shall sign the form attached hereto acknowledging such responsibility prior to having access to such information.

5. Defendants, and any other person to whom disclosure is made pursuant to the provisions of this Order, shall engage in no retaliatory or disciplinary actions against inmates whose identities are so disclosed solely on account of such disclosure. Nothing in this protective order shall prohibit disclosure of an inmate's name for exigent penal or law enforcement purposes, such as the investigation or prosecution of criminal activity within the prison or the prevention of a suicide. In the event of disclosure under such exigent circumstances, defendants' counsel shall notify plaintiffs' counsel thereof as expeditiously as possible, following which plaintiffs' counsel may file an appropriate application with this Court.

6. All documents which include inmate names and personally-identifiable information about inmates (including inmate numbers) shall be sealed when filed with the Court. The parties are also to redact inmate names and personally-identifiable information about inmates from all documents filed with the Court and/or used in this litigation.

## RULING ON CROSS–MOTIONS FOR CLARIFICATION

JOAN GLAZER MARGOLIS, United States Magistrate.

■ Familiarity is presumed with this Magistrate's Ruling on Plaintiffs' Motion for Protective Order, filed October 27, 1988 (Dkt. # 40), and the Protective Order filed that same day (Dkt. # 41). Said Ruling and Protective Order were approved on November 22, 1988 in a written ruling by Judge Dorsey (Dkt. # 61), over defendants' objection.

On December 5, 1988, both sides filed motions for clarification of the Protective Order; by agreement of counsel at the impromptu discovery conference held that day, both motions were placed under seal. At issue is paragraph 5 of the Protective Order, which reads in full:

Defendants, and any other person to whom disclosure is made pursuant to the provisions of this Order, shall engage in no retaliatory or disciplinary actions against inmates whose identities are so disclosed solely on account of such disclosure. Nothing in this protective order shall prohibit disclosure of an inmate's name for exigent penal or law enforcement purposes, such as the investigation or prosecution of criminal activity within

the prison or the prevention of a suicide. In the event of disclosure under such exigent circumstances, defendants' counsel shall notify plaintiffs' counsel thereof as expeditiously as possible, following which plaintiffs' counsel may file an appropriate application with this Court.

Both sides agree that ¶ 5 does not curtail the ability of defendants to respond promptly when informed, through the discovery process, of impending difficulties. The instant controversy arises regarding what response, if any, defendants may take when prison officials learn, again through the discovery process, of past activities which may warrant the institution of disciplinary measures or criminal prosecution. Defendants argue that to prevent prison officials from taking appropriate measures results in granting plaintiffs and other inmates total "immunity"; plaintiffs, on the other hand, argue that leaving them without protection will have a "chilling effect" upon the plaintiffs' willingness to prosecute this action and upon the cooperation of other inmates.

As plaintiffs' counsel accurately has stated, due to the uniqueness of this case, this issue needs a "sensitive balancing" between the privacy interests of the plaintiffs and the institutional security concerns of the defendants. Accordingly, ¶ 5 of the Protective Order is hereby amended as follows:

Defendants, and any other person to whom disclosure is made pursuant to the provisions of this protective order, shall engage in no retaliatory or disciplinary actions against inmates whose identities are so disclosed solely on account of disclosure of such identities.

(a) Nothing in this protective order shall prohibit disclosure of an inmate's name for exigent penal or law enforcement purposes, such as the investigation or prosecution of ongoing or anticipated criminal activity within the prison or the prevention of a suicide.

(b) Nothing in this protective order shall prohibit disclosure of an inmate's name for penal or law enforcement purposes with respect to past activity which may warrant the institution of disciplinary measures or criminal prosecution, provided, however, that such past activity occurred within three months prior to such disclosure and was of a serious nature.

(c) Nothing in this protective order shall prohibit the disclosure of an inmate's name for penal or law enforcement purposes with respect to disciplinary actions taken against state employees.

In the event of disclosure under the circumstances set forth in subparagraphs (a), (b), or (c), *supra*, defendants' counsel shall notify plaintiffs' counsel as expeditiously as possible, following which plaintiffs' counsel may file an appropriate application with this Court.

*See* 28 U.S.C. Section 636(b) (written objections to ruling must be filed within ten days after service of same); F.R.Civ.P. 72; Rule 2 of the Local Rules for United States Magistrates, United States District Court for the District of Connecticut.