**David DOE, et al.**

v.

**Larry R. MEACHUM, Commissioner, et al.**

**Civ. No. H–88–562 (PCD).**

United States District Court, D. Connecticut.

March 27, 1989.

Shelley Geballe, Martha Stone, Connecticut Civ. Liberties Union Foundation, Hartford, Conn., J.L. Pottenger, Jr., Jerome N. Frank, Legal Services Organization, New Haven, Conn., for plaintiffs.

Stephen O'Neill, Steve Strom, Richard Couture, Asst. Attys. Gen., Hartford, Conn., for defendants.

### RULING ON PLAINTIFFS' MOTION TO TESTIFY IN FICTITIOUS NAMES AND IN CHAMBERS

JOAN GLAZER MARGOLIS, United States Magistrate.

On August 15, 1988, plaintiffs commenced this action with respect to the various policies of the Connecticut Department of Corrections regarding inmates who are

infected with the Human Immunodeficiency Virus ("HIV")[1]; that same day, Judge Cabranes granted plaintiffs' motion for permission to prosecute suit in fictitious names.[2]

On March 3, 1989, plaintiffs filed the pending motion to testify in fictitious names and in chambers (Dkt. # 103) with respect to the hearing on plaintiffs' motion for preliminary injunction, scheduled to commence on April 5, 1989; their brief in support was filed on March 20, 1989 (Dkt. # 116). Defendants' brief in opposition was filed on March 17, 1989. (Dkt. # 115). Plaintiff's reply brief was filed on March 22, 1989. (Dkt. # 117). Oral argument was held on March 23, 1989. For the reasons stated herein, plaintiffs' motion is granted in part and denied in part.

The significant privacy interest of plaintiffs was noted in this Magistrate's Ruling on Plaintiffs' Motion for Protective Order, filed October 27, 1988 (Dkt. # 40), which observed as follows:

> While several decisions have upheld the right of prison officials to identify and isolate suspected AIDS carriers, *e.g.,* *Baez v. Rapping,* 680 F.Supp. 112, 115 (S.D.N.Y.1988); *Judd v. Packard,* 669 F.Supp. 741, 743 (D.Md.1987); *Cordero v. Coughlin,* 607 F.Supp. 9, 10 (S.D.N.Y. 1984), at least one court has recognized that an inmate infected with AIDS has a constitutional right to privacy in his medical records. *Woods v. White,* 689 F.Supp. 874, 876 (W.D.Wis.1988).

Some five months ago, District Judge Munson similarly was required to face "the difficult task of ... determining the nature and extent of the privacy rights of inmates who have tested positive for exposure to ... HIV ..." *Doe v. Coughlin,* 697 F.Supp. 1234, 1234 (N.D.N.Y.1988). The court ruled that each plaintiff

> ... is fully aware that he is infected with a disease which at the present time has inevitably proven fatal. In the court's

view there are few matters of a more personal nature, and there are few decisions over which a person could have a greater desire to exercise control, than the manner in which he reveals that diagnosis to others. An individual's decision to tell family members as well as the general community that he is suffering from an incurable disease, particularly one such as AIDS, is clearly an emotional and sensitive one fraught with serious implications for that individual. Certain family members may abandon the AIDS victim while others may be emotionally unprepared to handle such news. Within the confines of the prison the infected prisoner is likely to suffer from harassment and psychological pressures. Beyond the prison's walls the person suffering from AIDS is often subject to discrimination.

> ... It may be even more essential for a prisoner than a person who enjoys the freedoms associated with life outside of prison, and the personal strength derived from those freedoms, that the prisoner be accorded the ability to protect and shape his identity to as great a degree as possible. There is little question but that the prisoner identified as having AIDS will be severely compromised in his ability to maintain whatever dignity and individuality a prison environment allows.

*Id.* at 1237-38 (footnotes omitted).

Plaintiffs have been permitted to commence lawsuits anonymously in cases involving abortion, mental illness, personal safety, homosexuality, transsexuality, illegitimacy, and abandonment of children, "[t]he common thread" being "the presence of some social stigma or the threat of physical harm to the plaintiffs attaching to disclosure of their identities to the public record." *Doe v. Rostker,* 89 F.R.D. 158, 161 (N.D.Cal.1981) (footnotes omitted).

---

**1.** For convenience purposes only, the acronym HIV shall be interchangeable with the acronyms AIDS (Aquired Immune Deficiency Syndrome) and ARC (AIDS–Related Complex).

**2.** By agreement of counsel, a class was certified in this matter (*see* Dkt. # 88, filed January 20, 1989 and approved absent objection on February 13, 1989); counsel further agreed as to the content and manner of notice to class members (*see* Dkt. # 102, filed March 3, 1989).

Defendants agree that this case is one where fictitious names are appropriate.[3]

■ The more problematic issue is whether plaintiffs ought to be able to testify in chambers and to have the transcript of their testimony sealed to the extent necessary so as not to reveal their identities.[4] As in *Doe v. Coughlin, supra,* the court here must "tread[ ] on relatively unexplored territory." 697 F.Supp. at 1236. Juxtaposed against plaintiffs' privacy interests is the weight of the First Amendment, which ensures the right of the public and of the press to attend judicial proceedings. The United States Supreme Court has made abundantly clear that the First Amendment "guarantees" such right with respect to criminal trials. *Press–Enterprise Co. v. Superior Court of Cal.,* 478 U.S. 1, 6–15, 106 S.Ct. 2735, 2739–44, 92 L.Ed.2d 1 (1986); *Press–Enterprise Co. v. Superior Court of Cal.,* 464 U.S. 501, 505–13, 104 S.Ct. 819, 821–26, 78 L.Ed.2d 629 (1984); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 575–81, 100 S.Ct. 2814, 2826–30, 65 L.Ed.2d 973 (1980). In his plurality opinion and in his concurrence in *Richmond Newspapers,* Chief Justice Berger and Justice Stewart, respectively, observed that historically both civil and criminal trials have been presumptively open. 448 U.S. at 580 n. 17, 599, 100 S.Ct. at 2829 n. 17, 2840. The Second Circuit has agreed that First Amendment guarantees apply equally to civil trials. *Westmoreland v. Columbia Broadcasting System, Inc.,* 752 F.2d 16, 22–23 (2d Cir.1984), *cert. denied sub nom. Cable News Network, Inc. v. United States District Court,* 472 U.S. 1017, 105 S.Ct. 3478, 87 L.Ed.2d 614 (1985) (rejecting cable network's request to film live well-publicized defamation trial).

At issue in *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165 (6th Cir.), *reh. denied on other issues,* 717 F.2d 963 (6th Cir.1983), a seminal decision in this field, were documents with respect to the tar and nicotine contents of cigarettes, which documents were placed under seal in the pending litigation. The Sixth Circuit stated that despite the significant justifications for an open courtroom, the First Amendment right of access is "not absolute":

> Courts have carved out several distinct but limited common law exceptions to the strong presumption in favor of openness. The exceptions to the practice of maintaining openness in the courtroom fall into two broad categories: those based on the need to keep order and dignity in the courtroom and those which center on the content of the information to be disclosed to the public....
>
> It is the second group of limitations on access to court proceedings that concerns us here. Under the common law, content-based exceptions to the right of access have been developed to protect competing interests. In addition to the defendant's right to a fair trial, these interests include certain privacy rights of participants or third parties, trade secrets and national security....
>
> Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records....

*Id.* at 1179 (citations omitted).

In *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1984), another leading case, the Third Circuit set forth certain procedural and substantive requirements which must be satisfied before a hearing may be closed to the public and press. *Publicker* involved a hearing on a motion for preliminary injunction in a proxy fight over control of a corporation; the hearing

---

**3.** Defendants have reserved the right, however, to ask for modifications, as needed.

**4.** Plaintiffs have agreed to disclose to defense counsel the true names of their HIV-infected witnesses, so that defendants may prepare their defense, provided any persons to whom defense counsel make *re*disclosure be required to file an Acknowledgement of Duty Not to Disclose, at-tached to the Protective Order, filed October 27, 1988. (Dkt. # 41). *See* Ruling on Defendants' Request for Permission to Disclose the Identities of Certain Named Plaintiffs to Department of Correction Staff and for Partial Modification of the Protective Order Dated October 27, 1988, also filed today.

was closed due to "sensitive" information regarding improper activities by Publicker's foreign subsidiary. The appeals court reversed, holding:

> Procedurally, a trial court in closing a proceeding must both articulate the countervailing interest it seeks to protect and make "findings specific enough that a reviewing court can determine whether the closure order was properly entered."
>
> ... Substantively, the record before the trial court must demonstrate "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." ...

*Id.* at 1071 (citations omitted). The substantive requirements were not met, in that the closure was not "narrowly tailored," the court suggesting "a less restrictive alternative such as a bifurcated hearing." *Id.* at 1074. *See also Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253, 254 (4th Cir.1988) (requiring district court to give the public adequate notice of the sealing of documents, to provide interested persons with an opportunity to object to the request, and to state its reasons for such closure on the record, supported by specific findings).

As Judge Munson so eloquently wrote in *Doe v. Coughlin, supra,* "there are few matters of a more personal nature" than the privacy interests of plaintiffs here. If any interests are sufficiently "overriding" to overcome the strong presumption in favor of public access, surely the plaintiffs' interests here are. The difficulty lies in evaluating whether there is "a less restrictive alternative" to a blanket order of in chambers testimony and the sealing of transcripts with respect to the testimony of all present or former inmates. The Magistrate must conclude, reluctantly, that a less restrictive alternative does exist, the exact parameters of which may need further refinement between now and April 5, 1989.

■ On March 7, 1989, this Magistrate issued an order (Dkt. # 105) directing both sides to address the feasibility and implications of holding a portion of the preliminary injunction hearing at a correctional institution. There appears to be a role reversal here, with plaintiffs arguing that "the privacy rights of *incarcerated* inmates are more likely to be preserved if testimony is taken *outside of* a DOC facility" (Plaintiffs' Brief in Support at 4–5) (emphasis in original), while the defendants advocate that trials in correctional institutions are open to the public. (Defendants' Brief at 11–12). It is clear that plaintiffs, for whatever reason, have a greater fear of disclosure of their identities within the prison walls than in the outside community. There can be no argument that security interests are better served, and overall expenses dramatically reduced, if the testimony of incarcerated inmates were taken within a centrally located correctional institution. As legitimate as defendants' security concerns are, they must bend, however, to plaintiffs' significant privacy interests, as expressed in *Doe v. Coughlin, supra.*

Accordingly, the hearing on plaintiffs' motion for preliminary injunction shall be held in an open courtroom in the District Court in Bridgeport. Testifying class members may testify under fictitious names and there shall be no testimony of a sufficiently detailed nature to compromise their identities. If any testifying class member so wishes, he or she may appear in the courtroom in a disguised manner, so that he or she will not be recognized by facial or other characteristics. Lastly, to the extent there are any witnesses whose circumstances are so unusual that the above guidelines are insufficient to protect their identities, on or before March 30, 1989, plaintiffs may file a motion for reconsideration of this ruling with respect to such individuals, attached to which shall be an affidavit or affidavits, filed under seal, setting forth in detail the underlying circumstances and why the protections described above are inadequate.

*See* 28 U.S.C. Section 636(b) (written objections to ruling must be filed within ten days after service of same); F.R.Civ.P. 72; Rule 2 of the Local Rules for United States Magistrates, United States District Court for the District of Connecticut.