JOHN WARE al., Appellants, v VALLEY STREAM HIGH SCHOOL DISTRICT et al., Respondents.

Second Department, September 5, 1989

APPEARANCES OF COUNSEL

*Reisman, Pierez, Reisman & Calica (Robert M. Calica* and *Myra P. Lapidus* of counsel), for appellants.

*D'Amato & Lynch (Theodore Deliyannis* and *Lynne A. Bizzarro* of counsel), for Valley Stream High School District, respondent.

*Robert Abrams, Attorney-General (Lawrence S. Kahn* and *Elizabeth Bradford* of counsel), for New York State Commissioner of Education and another, respondents.

### OPINION OF THE COURT

Per Curiam.

The primary issue to be resolved on this appeal is whether certain regulations promulgated by the Commissioner of Education of the State of New York (hereinafter the Commissioner) requiring all primary and secondary school students to receive instruction with regard to Acquired Immune Deficiency Syndrome (hereinafter AIDS), and alcohol and drug abuse, impermissibly violate, *inter alia,* the appellants' First Amendment right to freely exercise their religious beliefs (US Const 1st Amend). Under the facts and circumstances of this case, we conclude that there are compelling and dominant State interests underlying the limited health education curriculum to which the appellants' children will be exposed, and, accordingly, hold in favor of the respondents.

### I

The appellants John Ware, Robert Scott and Peter MacGregor are members of an "unincorporated church" *(see,* Religious Corporations Law § 2) known as the Plymouth Brethren (hereinafter the Brethren) and are among approximately 140 such adherents who reside in the Valley Stream and Rosedale areas of Nassau and Queens Counties. An addi-

tional 80 members of the Brethren, on whose behalf this action and proceeding have also been purportedly commenced, live in Rochester, New York. Children of members of the Brethren attend the public schools in these areas and receive a secular education.

The Brethren is a devoutly religious group which was founded in the 1820's by a group of Irish Christians who became disenchanted with the established churches of the period, which they determined no longer met their spiritual needs. From its inception, the Brethren's faith has been dedicated to strict adherence to Biblical teachings. Fundamental to its creed is the precept of spiritual separationism pursuant to which members of the Brethren seek to distance themselves from all things which they consider to be evil. Accordingly, members of the Brethren spend much of their time in group prayer and shun many modern technological innovations which they regard as evil *(see, e.g., In re Marriage of Hadeen,* 27 Wash App 566, 619 P2d 374, 380).

The appellants now find themselves faced with a perceived evil in the form of certain regulations promulgated by the Commissioner which mandate that all school children shall receive instruction concerning, *inter alia,* the transmission and prevention of AIDS, and drug and alcohol abuse avoidance *(see,* 8 NYCRR 135.3). The appellants seek a total exemption from this curriculum on the grounds that it violates: (1) their right to engage in the free exercise of their religion as guaranteed by the First Amendment (US Const 1st Amend), and (2) their implied fundamental constitutional right of privacy to raise their children in accordance with their religious tenets.

## II

Education Law § 3204 (3) provides that minors who are students, in public schools or elsewhere, are required to receive instruction, *inter alia,* in hygiene and physical training. Furthermore, Education Law § 803 (1) provides that all elementary and secondary school students above the age of eight shall receive instruction in physical education which is designed to promote, *inter alia,* physical fitness and health. Pursuant to his statutory authority, and with the approval of the New York State Board of Regents .*(see,* Education Law §§ 207, 803 [1]), the Commissioner promulgated regulations governing health education instruction pursuant to which

schools must provide "instruction concerning the misuse of alcohol, tobacco and other drugs" (8 NYCRR 135.3 [a]). Moreover, all primary and secondary school students are required to receive "appropriate instruction concerning * * * AIDS * * *. Such instruction shall be designed to provide accurate information to pupils concerning the nature of the disease, methods of transmission, and methods of prevention [and] shall stress abstinence as the most appropriate and effective premarital protection against AIDS" (8 NYCRR 135.3 [b] [2]; [c] [2]). Recognizing the sensitive nature of this curriculum, these regulations further provide that parents may request, in writing, an exemption from AIDS-prevention lessons from the principal of the school which their child or children attend upon an assurance that they will provide suitable home instruction. Similarly, a pupil may be excused generally from the study of health and hygiene upon a verified petition by an authorized religious representative asserting that such study conflicts with the religion of the pupil's parents or guardian (see, Education Law § 3204 [5]; 8 NYCRR 16.2).

## III

Perceiving the compulsory health education described above to constitute an evil, the avoidance of which the Brethren's faith requires, the appellants wrote to the Superintendent of Schools of the Valley Stream High School District requesting that their children receive a total exemption from AIDS instruction. The Board of Education of the Valley Stream High School District denied the application, although it did grant a limited exemption excusing the appellants' children from five specific lessons concerning AIDS prevention. The five classes from which the appellants' children were excused dealt with the topics regarding abstinence from illegal intravenous drug use (grades 7 through 8 and 9 through 12), abstinence from sexual activity (grades 7 through 8 and 9 through 12) and the prevention of AIDS transmission to an unborn baby. The appellants' subsequent application to the Commissioner for a total exemption from the challenged curriculum was similarly denied on April 12, 1989. In doing so, the Commissioner stressed the compelling need to educate all students about the AIDS crisis. The limited exemption from the five AIDS prevention lessons was not disturbed and, thus, remains in effect.

During the pendency of the administrative proceedings, the

appellants commenced the instant action and proceeding against the Valley Stream High School District, the Commissioner and the State of New York, *inter alia,* for a judgment declaring that compulsory "AIDS-related health instruction and other mandated health instruction concerning sexual conduct and drug use" violated both the appellants' constitutional rights to freely exercise their religion *(see,* US Const 1st Amend), and their "implied fundamental constitutional right of privacy and freedom from governmental interference with their liberty to supervise and rear their children". Accordingly, the appellants sought to enjoin the mandated participation of their children in the challenged curriculum.

The respondents, thereafter, separately moved for summary judgment. In support thereof, the respondents argued, among other things, that the mere exposure of the appellants' children to information and materials which they consider to be inimical to their religion does not constitute a violation of the appellants' free exercise rights. Moreover, the respondents contended that the State had a compelling interest in educating its citizens to protect them from the dangers of AIDS and alcohol and drug abuse.

The Supreme Court agreed with the respondents' position and granted their motions for summary judgment. The court found that the appellants' rights had not been impermissibly infringed upon and, in any event, that compelling State interests would justify the compulsory participation by the appellants' children in the health education curriculum. The Supreme Court also upheld the Commissioner's determination dated April 12, 1989, which denied the appellants' application for a total exemption on the ground that it had a rational basis.

The appellants vigorously contest the Supreme Court's findings that the mere exposure to ideas which offend the appellants' religious sensibilities does not constitute an infringement on their constitutional right to freely exercise their religion or violate their privacy rights.

We reject the appellants' contentions, albeit for somewhat different reasons than those articulated by the Supreme Court.

## IV

Generally, the mere exposure to information which conflicts with an individual's religious beliefs does not constitute a

violation of the Free Exercise Clause of the First Amendment (see, *Mozert v Hawkins County Bd. of Educ.*, 827 F2d 1058, *cert denied* — US —, 108 S Ct 1029; *Davis v Page*, 385 F Supp 395), absent some compulsion to adopt an antithetical belief or to perform an act which conflicts with one's deeply held religious convictions (see, *Abington School Dist. v Schempp*, 374 US 203; *Board of Educ. v Barnette*, 319 US 624). The instant case, however, presents a rather novel application of this principle inasmuch as the Brethren's religious doctrine dictates that its adherents are to remain "simple as to evil" for even the "details of evil are regarded as being subversive". Under circumstances such as those present in this case, compulsory education which exposes the appellants' children to the "details of evil" which their religion instructs them to avoid may place a limited burden upon the free exercise of their religion (see, Dent, *Religious Children, Secular Schools*, 61 S Cal L Rev 863, 886-898 [1988]; Strossen, *"Secular Humanism" and "Scientific Creationism": Proposed Standards for Reviewing Curricular Decisions Affecting Students' Religious Freedom*, 47 Ohio St LJ 333, 374-375 [1988]), and, therefore, may constitute a violation of the Free Exercise Clause.

However, while there may be some merit to the appellants' assertions that the compulsory health education curriculum at bar constitutes a burden upon their rights to freely exercise their religious liberties, even fundamental rights such as those protected by the Free Exercise Clause (see, *Johnson v Robison*, 415 US 361) may be impinged upon through the least restrictive means (see, *Sherbert v Verner*, 374 US 398), when, in so doing, the State is advancing a compelling interest which is essential to the accomplishment of an overriding governmental purpose (see, *United States v Lee*, 455 US 252). The compulsory health education curriculum in controversy clearly meets this test as it involves several compelling State interests.

It is well settled that education of its citizens is one of the most important functions of State and local government (see, *Brown v Board of Educ.*, 347 US 483; see also, *Wisconsin v Yoder*, 406 US 205, 213). Accordingly, in cases involving religious objections to school curricula, the courts have repeatedly placed the State's educational interest above the exercise of unbridled religious freedom (see, e.g., *Mozert v Hawkins County Bd. of Educ.*, 827 F2d 1058, *supra; Davis v Page*, 385 F Supp 395, *supra; Murphy v Arkansas*, 852 F2d 1039; *Fellowship Baptist Church v Benton*, 815 F2d 485; *Duro v District Attorney, Second Jud. Dist. of N. C.*, 712 F2d 96, *cert denied*

465 US 1006; *Blackwelder v Safnauer,* 689 F Supp 106, *affd* 866 F2d 548). Moreover, the object of the instant State educational interest is the protection of the public health, which is itself a compelling State interest *(see, Roman v Appleby,* 558 F Supp 449, 456, and cases cited therein). There can be little doubt that education regarding the dangers of drug and alcohol abuse constitutes a compelling State interest, and the prevention of AIDS transmission has itself been defined as a substantial and compelling State interest *(see, Matter of Doe v Coughlin,* 71 NY2d 48, 57, *cert denied* — US —, 109 S Ct 196; *Doe v Roe,* 139 Misc 2d 209; *City of New York v New St. Mark's Baths,* 130 Misc 2d 911, *affd* 122 AD2d 747; *see generally,* Merritt, *Communicable Disease and Constitutional Law: Controlling AIDS,* 61 NYU L Rev 739, 778 [1986]).

Indeed, in denying the appellants' request for a total administrative exemption the Commissioner properly recognized:

"[T]he AIDS crisis has reached epidemic proportions. Never in modern history has society been confronted with an infectious disease of greater magnitude. According to the State of New York's 1989 inter-agency AIDS planning document, an estimated 90,500 New Yorkers will have been diagnosed with the AIDS virus by 1994. As the Surgeon General stated in his 1986 report on AIDS, this human devastation will be accompanied by economic and political changes which will affect our social institutions, our educational practices and our health care systems.

"At this point in the history of the disease, it is well recognized that education is the most powerful and important weapon against the spread of AIDS. In 1988, the Presidential Commission on the Human Immunodeficiency Virus Epidemic recommended school-based education as an essential component of the nation's defense against AIDS. The Commission concluded that *no citizen is exempt from the need to be educated about this disease, and that appropriate education in the elementary and secondary school systems must be provided in order to combat the tragedy we are witnessing today.* Clearly, immediate and universal public education must play a primary role in curbing a disease which already has had such catastrophic effects" (emphasis added) *(see also,* Orland and Wise, *The AIDS Epidemic: A Constitutional Conundrum,* 14 Hofstra L Rev 137, 143-148 [1985]).

The aforesaid reasoning is unassailable and the appellants have proffered no evidence to the contrary. Accordingly, in

light of the numerous compelling State interests involved in the instant controversy, we conclude that the appellants' religious freedom has not been impermissibly infringed upon by the curriculum under discussion.

Moreover, contrary to the appellants' contentions, they may not avoid the mandatory health education curriculum by invoking their implied fundamental right of privacy (see, e.g., Matter of Hofbauer, 47 NY2d 648), because uncontradicted religious indoctrination which denies the existence of undeniable health crises does not provide a suitable alternative to education. Indeed, while the appellants maintain that their pious religious existence will better protect their children from the plagues of AIDS and substance abuse by insulating them from their methods of transmission, this representation is insufficient. Significantly, the Brethren's doctrine contemplates that some of its adherents may stray from its rigorous precepts and provides that "[s]odomites, fornicators and adulterers [will be] withdrawn from" and may be cast out of the community. Such individuals, who would then be integrated into society-at-large, ignorant of AIDS and its methods of transmission and prevention, will surely be at risk and will, undeniably, if infected, constitute a potentially grave risk to all with whom they come into intimate contact. As the Supreme Court correctly noted, the Brethren is not an isolated community (cf., Wisconsin v Yoder, 406 US 205, supra), nor is it "immune from the known hazards of AIDS". This very real likelihood that disaffected members of the Brethren will leave or may be compelled to leave the confines of the faith clearly underscores the compelling need for the children of members to receive the compulsory health education instruction in issue.

While we are mindful that the appellants may be genuinely offended by the imposed curriculum, it is also true that public schools are not required to delete from their curricula all materials that offend a religious sensibility (see, Florey v Sioux Falls School Dist. 49-5, 619 F2d 1311, cert denied 449 US 987). Although the appellants would undoubtedly prefer to avoid the health education curriculum to which their children will be exposed, the very real and dangerous health crisis which this curriculum was designed to address compels its dissemination to all students. We further note that, in an effort to impinge no more than is necessary upon the appellants' religious sensibilities, the Commissioner excused the appellants' children from the prevention portion of the curriculum.

Since a declaratory judgment is sought, the Supreme Court should have made a declaration of the rights of the parties rather than dismissing the complaint in its entirety *(see, Lanza v Wagner,* 11 NY2d 317, 334, *appeal dismissed* 371 US 74, *cert denied* 371 US 901). Accordingly, the order and judgment is modified, on the law, by adding a provision thereto declaring that 8 NYCRR 135.3 (b) (2) and (c) (2) are not unconstitutional as applied to the appellants; as so modified, the order and judgment is affirmed, without costs or disbursements.

MOLLEN, P. J., MANGANO, THOMPSON, BRACKEN and BROWN, JJ., concur.

Ordered that the order and judgment is modified, on the law, by adding a provision thereto declaring that 8 NYCRR 135.3 (b) (2) and (c) (2) are not unconstitutional as applied to the appellants; as so modified, the order and judgment is affirmed, without costs or disbursements.