# In the Matter of NEW YORK STATE SOCIETY OF SURGEONS et al., Appellants, v DAVID M. AXELROD, as Commissioner of Health of the State of New York, et al., Respondents.

Third Department, May 3, 1990

## APPEARANCES OF COUNSEL

*Hinman, Straub, Pigors & Manning, P. C. (Bartley J. Costello, III,* and *Paula Fitz Battiste* of counsel), for appellants.

*Robert Abrams, Attorney-General (Evelyn M. Tenenbaum* and *Susan L. Watson* of counsel), for respondents.

*Winthrop, Stimson, Putnam & Roberts (Robert F. Bacigalupi, Wilfredo Fernandez, Susan J. Kohlmann* and *David G. Keyko* of counsel); *Lambda Legal Defense Education Fund, Inc. (David Barr* and *Thomas B. Stoddard* of counsel); and *New York Lawyers for Public Interest (Leslie Salzman* of counsel), for Public Health Association of New York City and others, *amici curiae.*

## OPINION OF THE COURT

HARVEY, J.

In February 1988 petitioners, four medical societies, requested that respondents, the Commissioner of Health and the Public Health Council, designate an infection with human immunodeficiency virus (hereinafter HIV infection) as a communicable disease and a sexually transmissible disease[1] pursuant to Public Health Law § 225 (5) (h) and § 2311. To do so

[1]. An individual with HIV infection may develop acquired immune deficiency syndrome (hereinafter AIDS). There is presently no cure for HIV infection or AIDS. However, an individual with HIV infection may not develop any signs of the infection and may not develop AIDS.

would trigger the operation of statutes providing for isolation and quarantine, reporting, testing and contact testing for those diseases added to the list. Petitioners' main concern is with the provisions relating to mandatory testing and contact tracing since they concede that isolation and quarantine would be inappropriate for AIDS or HIV-infected patients. Respondents' decision denying petitioners' request was in a letter which stressed, among other things, the importance of the voluntary cooperation of affected individuals and the fear that "[a] level of confidentiality might also be lost" if such designations were made. Petitioners thereafter commenced this CPLR article 78 proceeding, principally alleging that respondents' action in refusing to make the requested designation was in excess of their authority and seeking to compel respondents to add HIV infection to the lists.[2] Supreme Court dismissed the petition on the merits and this appeal by petitioners followed.

■ Initially, we reject respondents' contention that petitioners lacked standing to challenge respondents' action in failing to designate HIV infection a communicable or sexually transmissible disease. They contend that petitioners have failed to demonstrate that they are adversely affected by respondents' determination. Petitioners allege that respondents' failure to designate HIV infection a communicable or sexually transmissible disease has interfered with their ability to perform their ethical responsibilities to improve the public health, interferes with their ability to provide quality treatment to their patients, and interferes with their ability to adequately protect themselves from disease. The petitioning party must have a legally cognizable interest that is or will be affected by the determination (see, Matter of Har Enters. v Town of Brookhaven, 74 NY2d 524, 527-528). The Court of Appeals has stated that "[t]he increasing pervasiveness of administrative influence on daily life * * * necessitates a concomitant broadening of the category of persons entitled to a judicial determination" of administrative actions (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 10). Supreme Court properly concluded that the allegations in the petition are sufficient to establish that petitioners and their members are adversely affected and within the zone of interest to be protected by Public Health Law § 225 (5) (h) and § 2311.

---

2. By permission of Supreme Court, various individual physicians and associations, including the Public Health Association, filed an *amicus* brief and affidavits in opposition to the petition.

■ Turning to the merits, it is our view that respondents did not exceed their authority or act arbitrarily or capriciously when they determined that HIV infection would not be designated as a communicable or sexually transmissible disease. Our scope of review in a CPLR article 78 proceeding is limited to determining whether the challenged action represents a reasonable exercise of the agency's authority *(see, Matter of Society of N. Y. Hosp. v Axelrod,* 70 NY2d 467, 473; *Matter of Sigety v Ingraham,* 29 NY2d 110, 114). A determination must generally be sustained when it is not arbitrary and capricious or in violation of statutory law *(see, Matter of Severino v Ingraham,* 44 NY2d 763, 764).

While petitioners contend that Public Health Law § 225 (5) (h) and § 2311 set mandatory standards for the designation of a disease as communicable or sexually transmissible, it is apparent that the Legislature has left such designations to respondents' discretion. Public Health Law § 225 (4) gives to the Public Health Council the authority to establish the State's Sanitary Code subject to the approval of the Commissioner of Health. Public Health Law § 225 (5) (h) provides that "[t]he sanitary code *may* * * * designate the communicable diseases which are dangerous to the public health" (emphasis supplied). The Legislature's use of the permissive word "may" is clear evidence that a designation of a disease as communicable is left to the discretion of respondents.

With respect to the HIV infection's possible status as a sexually transmissible disease, petitioners argue that because the infection is principally transmitted by sexual contact[3] and has an impact on individual morbidity and the health of newborns, respondents must include it on the list of sexually transmissible diseases. We do not agree. Public Health Law § 2311 provides that: "The commissioner shall promulgate a list of sexually transmissible diseases, such as gonorrhea and syphilis, for the purposes of this article. The commissioner, in determining the diseases to be included in such list, shall consider those conditions principally transmitted by sexual contact and the impact of particular diseases on individual morbidity and the health of newborns." Although the statutory language clearly mandates that certain actions be taken

---

3. This assertion is disputed since respondents assert that HIV infection is no longer principally transmitted by sexual contact in this State; rather, statistics allegedly show that the infection is now principally transmitted by intravenous drug use.

by the Commissioner, such as the promulgation of a list, it is apparent that the determination of the diseases to be so designated remains within the discretion of the Commissioner. Notably absent from the statutory language is a requirement that the list include each disease that the Commissioner determines to be characterized by the listed factors *(see, e.g., Natural Resources Defense Council v Train,* 411 F Supp 864, 867, *affd* 545 F2d 320).

Finally, our review of the record convinces us that respondents' determination is rationally based and cannot be annulled on the ground that it is arbitrary or capricious *(see, Matter of Lewiston-Porter Cent. School Dist. v Sobol,* 154 AD2d 777; *Matter of Wohl v Ambach,* 105 AD2d 999, 1001, *affd* 66 NY2d 818). The thrust of petitioners' argument is that the reporting requirements contained in the statutes are crucial in controlling the spread of HIV infection. Respondents point out, however, that the reporting requirements would be redundant because New York State and New York City health officials already have access to all the AIDS information required to be reported under the statutes and to almost all HIV confirmation test results.

Regarding mandatory testing and contact tracing, respondents persuasively argue that these methods are not effective in dealing with HIV infection because of the unique nature of the condition. HIV infection leading to AIDS is one of the few diseases which is both fatal and incurable. The potential for discrimination against those who may be infected is much greater than for other diseases. Infected persons may remain asymptomatic for many years and HIV antibody test results may be inaccurate because antibodies to HIV may not be produced for up to 14 months after exposure.

As a result of these and other factors, the Commissioner has actively promoted the voluntary cooperation of individuals who are at risk of contracting HIV infection. Support for this approach is found in the Legislature's enactment of Public Health Law article 27-F, which sets forth in detail a plan to promote voluntary testing and delineates the parameters within which contact tracing will be allowed. Contrary to the provisions for mandatory testing in connection with sexually transmissible and communicable diseases *(see,* Public Health Law § 2300; 10 NYCRR 2.6 [b]), article 27-F requires obtaining written informed consent from the individual to be tested prior to the performance of any HIV-related test *(see,* Public Health Law § 2781 [1]). Further, that article provides that a

person authorized by law to order the tests shall provide to the individual to be tested an "opportunity to remain anonymous and to provide written, informed consent through use of a coded system with no linking of individual identity to the test request or results" (Public Health Law § 2781 [4]). In contrast, neither Public Health Law § 225 nor the attendant regulations relating to the designation of communicable diseases *requires* the confidentiality of test results. In addition, the confidentiality afforded to sexually transmissible disease reports is limited (see, Public Health Law § 2306).

In sum, it is respondents' position that the voluntary cooperation of high-risk individuals will be acquired by existing programs and by the elimination of the fear that coercive measures will be taken. In their view, such cooperation would be chilled by the threat of mandatory testing despite assurances of confidentiality. Support for this position is provided in the United States Centers for Disease Control guidelines. Since there is a rational basis for respondents' assertions that nothing positive would be gained by the designation of HIV infection as a communicable or sexually transmissible disease and that the concerns voiced by petitioners are adequately addressed by existing legislation, we affirm the dismissal of the petition.

KANE, J. P. (dissenting). We respectfully dissent. We do agree with the majority that the Public Health Law calls for the designation of a disease as communicable or sexually transmissible at the discretion of the Commissioner of Health (see, Public Health Law § 225 [5] [h]; § 2311). In our view, however, the Commissioner's exercise of his discretion in refusing to designate AIDS a communicable disease is, in this instance, arbitrary, capricious and in contravention of both the record before us and the intent behind the relevant statutory law.

It is respondents' position that mandatory testing and contact tracing would prevent individuals with HIV infection from voluntarily cooperating with public health officials in curtailing AIDS. However true this may be, when contrasted with the current, dangerously critical level the epidemic has achieved, respondents' position fails to "take cognizance of the interests of health and life of the people of the state" (Public Health Law § 206 [1] [a]). Appropriate recognition of this "public health concern of the highest order" *(Ware v Valley Stream High School Dist.,* 75 NY2d 114, 128) would reveal

what the Commissioner of Education took note of in denying an exemption from AIDS instruction to school children of a certain religious faith. " '[T]he AIDS crisis has reached epidemic proportions. Never in modern history has society been confronted with an infectious disease of greater magnitude. According to the State of New York's 1989 inter-agency AIDS planning document, an estimated 90,500 New Yorkers will have been diagnosed with the AIDS virus by 1994. * * * [T]his human devastation will be accompanied by economic and political changes which will affect our social institutions, our educational practices and our health care systems' " *(Ware v Valley Stream High School Dist.,* 150 AD2d 14, 20, *mod* 75 NY2d 114, *supra).*

A report contained in the record and issued by the Institute of Medicine, National Academy of Sciences states that "[b]y the end of 1991 there will have been a cumulative total of more than 270,000 cases of AIDS in the United States" and that although AIDS cases will continue to involve recognized high-risk groups "[n]ew AIDS cases in men and women acquired through heterosexual contact will increase from 1,100 in 1986 to almost 7,000 in 1991". Even more alarmingly, the report states that "[p]ediatric AIDS cases will increase almost 10-fold in the next five years, to more than 3,000 cumulative cases by the end of 1991" (Confronting AIDS: Directions for Public Health, Health Care and Research, at 8 [National Academy Press 1986]).

In our view, these factors far outweigh respondents' concern, as stated by the majority, that "cooperation would be chilled by the threat of mandatory testing despite assurances of confidentiality". "The ability of public health departments to identify persons exposed to HIV expeditiously through testing, reporting and partner notification can be critical to effective therapeutic intervention" (Gostin, *The AIDS Litigation Project,* J AMA, Apr. 11, 1990, at 1962). For communicable diseases, testing, reporting and notification are provided for in our Public Health Law. AIDS and HIV infection are communicable diseases *(see, Matter of Doe v Coughlin,* 71 NY2d 48, 60, *cert denied* 488 US 879; *Matter of Health Ins. Assn. v Corcoran,* 140 Misc 2d 255, 260, *mod on other grounds* 154 AD2d 61; Merritt, *Communicable Disease and Constitutional Law: Controlling AIDS,* 61 NYU L Rev 739 [1986]), the transmission and spread of which the State has a substantial interest in preventing *(see, Matter of Doe v Coughlin, supra,* at 57). Although the designation of HIV infection

or AIDS as a communicable disease is a discretionary function of the Commissioner of Health, his refusal to so designate in view of clearly skyrocketing health concerns is arbitrary and capricious and further sidesteps an important concern voiced by petitioners, i.e., the physician's right and responsibility to know if their patients are infected and to proceed accordingly. We would therefore reverse Supreme Court's judgment and grant so much of the petition as seeks to require the Commissioner to designate AIDS as a communicable disease.

WEISS and YESAWICH, JR., JJ., concur with HARVEY, J.; KANE, J. P., and MIKOLL, J., dissent and vote to reverse in an opinion by KANE, J. P.

Judgment affirmed, without costs.